**UNITED STATES**

v.

**Airman Basic Larry O.V. EVANS, FR 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, United States Air Force.**

**ACM S27936.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 9 Aug. 1988.

Decided 19 April 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Darla G. Orndorff.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Jeffrey H. Curtis.

Before LEWIS, BLOMMERS and KASTL, Appellate Military Judges.

## DECISION

BLOMMERS, Judge:

Tried by special court-martial, the appellant elected a hearing before members. In accordance with his pleas, he was found guilty of malingering to avoid basic training in violation of Article 115, UCMJ, 10 U.S.C. § 915. Though pleading not guilty, he was also found guilty of attempted desertion in violation of the Article 85, UCMJ, 10 U.S.C. § 885.[1] He was sentenced to a bad conduct discharge, 60 days confinement, and to pay the United States a fine of $400.00. In his action, the convening authority disapproved the fine, but approved the remainder of the sentence adjudged by the court.

The case was originally submitted to us on the merits. Following initial review we specified the following issues:

### I

WERE ANY LESSER INCLUDED OFFENSES (ATTEMPTED AWOL AND/OR GOING FROM A PLACE OF DUTY) REASONABLY RAISED BY THE EVIDENCE?

### II

IF SO, WAS THE MILITARY JUDGE REQUIRED TO INSTRUCT THE COURT MEMBERS ON THE ELEMENTS OF THOSE OFFENSES, OR IS THE MATTER WAIVED BY TRIAL DEFENSE COUNSEL'S FAILURE TO REQUEST SUCH INSTRUCTIONS?

### III

IF SUCH INSTRUCTIONS WERE REQUIRED AND OMISSION THEREOF WAS NOT WAIVED, WHAT REMEDY SHOULD BE FORMULATED BY THIS COURT?

Having received briefs from both parties, we now resolve these questions.

### Facts

The appellant enlisted in the Air Force and commenced basic training at Lackland Air Force Base (AFB), Texas. He was looking forward to military service. However, he injured his foot to an extent that he could not continue training with his class. He was placed on medical hold, and permitted to go home on convalescent leave. While at home, he began to have second thoughts about a military career. Following his return to Lackland AFB, he was told he was fit to return to basic training. However, the night before he was to re-commence training, he intentionally broke his foot in three places by smashing it with his boot. On 3 May 1988 court-martial charges alleging malingering and a false official statement (this latter charge was subsequently dismissed at trial by the military judge) were preferred and served upon him. On 5 July 1988 he was transferred to "CQ Housing" because of disciplinary problems (though not clear from the record, this is apparently some form of limited restraint). He also had a conversation with his unit commander that day wherein the commander advised him that if he caused any further problems he would be placed into pretrial confinement. The following day, he and another airman basic left a controlled dormitory through the fire escape. This action on their part was observed by a dorm guard, who notified the dorm chief. The dorm chief went outside and observed the two airmen, who then started to run off. He pursued them for a couple of blocks, but was unable to catch them. The appellant and his cohort were caught by the Security Police before

---

**1.** Most attempt offenses are charged under Article 80, UCMJ, 10 U.S.C. § 880, but an attempt to desert is charged under the desertion article.

*See* Article 85(c), UCMJ; MCM, Part IV, paras. 4 c(5)(a) and 9(b)(4) (1984).

they got off the base. This action on the appellant's part led to the additional charge of attempted desertion.

After the Government rested, the defense called the appellant's unit commander. He testified, among other things, that prior to the 6 July incident the unit had been apprised through the American Red Cross that the appellant's grandmother was ill. However, the appellant was denied leave because of the pending court-martial charges. The appellant then testified under oath. He related that he had a girlfriend back home by whom he had fathered a child, now eleven months old. After he returned from convalescent leave, he received a call from his girlfriend. They had an argument and she told him that he would never see his daughter again. Subsequently, she would not accept his calls. He was disconsolate, as "[m]y daughter, she's the most precious thing in my life." About a week before he attempted to leave, he had received a phone call from home that his grandmother had just been rushed to the hospital for emergency surgery. Regarding his conversation with his commander the day before he attempted to leave the base, he testified:

A: Major Denninghoff told me that he was tired of my ... I believe he said, misconduct or something to that effect, and that he was going to put me in pretrial confinement the next morning. He said that I had graduated into the real world and he was going to put me into pretrial confinement the next morning.

Q: How did that affect you?

A: As far as I knew, in pretrial confinement you were only allowed one phone call and as far as I knew it was a jail. I didn't think you could contact the outside world or anything like that. I was scared. I can't see how he could ... he asked me if I was ... if I had any intention of taking off and I said, no. I told him that I had every intention of coming back and standing trial, I told him that.

The appellant concluded his testimony, as follows:

Q: Well, let's talk about what you wanted to do.

A: I wanted to go home, find my daughter, explain things, make sure my grandmother was alright and then come back. That is the reason that I requested leave ...

.    .    .    .    .

Q: Is it your testimony then to this court that you did not intend to remain away permanently?

A: No, no way.

Q: You did not intend to remain away?

A: No.

Q: You would have come back?

A: Oh yea.

Whether or not there were any lesser included offenses within the attempted desertion charge was a matter never raised at trial, and the military judge instructed the members only as to the attempted desertion as charged.

### Is an Attempted Unauthorized Absence A Lesser Included Offense of Attempted Desertion?

▮ The appellant contends that it is not, citing *United States v. Lakey*, 4 C.M.R. 837 (A.F.B.R.1952). In *Lakey*, the Air Force Board of Review held that attempting to absent oneself without authority (AWOL) is not included within the offense of attempting to desert, but is an offense separate and different therefrom. The Board reasoned that "an attempt involves the intent, specific in purpose, to commit the particular offense charged." *Id.* at 841. It then stated:

An attempt includes the design to commit the substantive offense alleged and an actual effort, to wit, an overt act, to carry *that* design into effect. Consequently where an attempt to commit one offense is charged, an attempt to commit another offense cannot be found. The same rationale does not apply to such type offenses as *assault* with *intent* to commit murder or rape, or other aggravated assaults. These offenses all in-

clude lesser offenses where the *intent* may be found to be different in degree from that charged, or found to be absent entirely, yet leaving the primary offense charged, to wit, the assault. But in attempt offenses, the determination that the substantive offense alleged was not attempted, as charged, disposes of the entire matter and excludes findings of guilty of any offense.

*Id.*[2] The Board did expressly recognize that an attempt to absent oneself without authority was an offense cognizable by court-martial. With this portion of its opinion, we agree. A year later, the Air Force Board of Review reaffirmed the rationale adopted in *Lakey*. *United States v. Busch*, 13 C.M.R. 765 (A.F.B.R.1953) (dealing with the legality of a finding of guilty of an attempt to break restriction).

■ That same year, 1953, the Army Board of Review declined to follow *Lakey*. *United States v. Osborne*, 10 C.M.R. 441 (A.B.R.1953. *Osborne* dealt with the validity of a convening authority's action approving only so much of the findings of guilty of attempted burglary as found the accused guilty of housebreaking. The Board found this action to be illegal, reasoning that an accused cannot be convicted of a consummated offense where only an attempt has been charged, but that a finding of guilty of the lesser included offense of attempted housebreaking could be affirmed. The Board stated:

The board of review has considered the decision of the Air Force Board of Review in *United States v. Lakey*, 4 CMR 837, holding that an attempted absence without leave is not included in an attempted desertion and determines that the rationale of that case conflicts with the plain language of Article 79, ...

[UCMJ]. To the extent that the rule in the Lakey Case is applicable to the facts of the instant case this board declines to follow that rule.

*Id.* at 442. *See also United States v. Hobbs*, 7 U.S.C.M.A. 693, 23 C.M.R. 157, 163 (1957); *United States v. Stover*, 2 C.M.R. 371 (A.B.R.1952), *pet. denied*, 3 C.M.R. 150 (C.M.A.1952). Finally, in 1956 the Air Force Board of Review decided the *Lakey* rationale was no longer valid. *United States v. Davis*, 21 C.M.R. 697 (A.F.B.R. 1956). There, the accused had been charged with an attempt to commit sodomy, but in accordance with his plea was found guilty by exceptions and substitutions of an attempt to commit an indecent act. Relying upon Article 79, UCMJ, 10 U.S.C. § 879, and the Army Board's decision in *Osborne*, the Board upheld the conviction. It ruled:

As pointed out above, the Lakey case concludes that when an accused is charged with an attempt to commit a principal offense, an attempt to commit a lesser included offense of that principal offense cannot be found. In the opinion of the Board of Review, such conclusion is contrary to the weight of authority, law, and logic, and should no longer be followed in the Air Force.

*Id.* at 699. *See also United States v. Zimmek*, 23 C.M.R. 714, 719 (A.F.B.R.1956). We believe that the principal of law established in the *Osborne* and *Davis* cases is a correct one; that is, in most cases, when an accused is charged with an attempt to commit an offense, then findings of guilty of an attempt to commit any lesser included offense within the offense charged may be returned.[3]

■ It is alternatively argued that since there is not a lesser included offense of

---

**2.** In reaching its conclusion, the Board relied principally upon language in the Manual for Courts–Martial discussing attempts, which at that time provided: "To constitute an attempt there must be a specific intent to commit the particular offense accompanied by an overt act which directly tends to accomplish the unlawful purpose." MCM, 1951, para. 159, at pg. 305.

**3.** Article 79, UCMJ provides: "An accused may be found guilty of an offense necessarily included in the offense charged *or of an attempt to commit either the offense charged or an offense*

*necessarily included therein."* (Emphasis added.) Article 80, UCMJ provides:

(a) An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

(b) Any person subject to this chapter who attempts to commit any offense punishable by this chapter shall be punished as a court-martial may direct, unless otherwise specifically prescribed.

attempted AWOL listed in the Manual for Courts–Martial, and both the military judge and counsel agreed on the instructions to be given, the appellant could not be found guilty of that lesser included offense. *United States v. McKinley*, 27 M.J. 78 (C.M.A.1988). In discussing lesser included offenses under Article 79, UCMJ, the Manual states: "Specific lesser included offenses, if any, are listed for each offense discussed in this Part, *but the lists are not all-inclusive.*" (Emphasis added.)[4] *See United States v. McKinley*, 27 M.J. at 80, n. 1. Absence without leave is specifically listed as a lesser included offense of desertion, and attempts are specifically listed as lesser included offenses of absence without authority. MCM, Part IV, paras. 9 d and 10 d (1984). Further, we find *McKinley* to be distinguishable from this case. Contrary to the situation in *McKinley*, the military judge did not rule that there were no lesser included offenses and counsel did not expressly agree that none existed. Since, as we noted, the subject of lesser included offenses was never discussed at trial, there is no "law of the case" as the Court of Military Appeals found to exist in *McKinley*. We conclude that attempt to absent oneself without authority is an offense in violation of Article 80, UCMJ, and that it is a lesser included offense to a charge of desertion or attempted desertion in violation of Article 85, UCMJ. *See* MCM, Part IV, para. 4 d (1984).

### *Was a Lesser Included Offense Raised and Instruction Thereon Required?*

■ Clearly, the appellant's contention that he never intended to remain away

permanently (the principal distinguishing feature between desertion and AWOL) raised the possibility of lesser included offenses. In this case, the lesser included offense of attempted AWOL was raised by the evidence present.[5] *See United States v. Serino*, 24 M.J. 848 (A.F.C.M.R.1987), *pet. denied*, 25 M.J. 480 (C.M.A.1987). Clearly, the appellant knew he had no authority to leave his organization and stipulated to that as a fact. He intended to go to his home in Oxnard, California, which we judicially note to be located a considerable distance from Lackland AFB, Texas. Equally clear is that once the issue was raised by the evidence, the military judge had a *sua sponte* duty to instruct the court members on the elements of the lesser included offense. *United States v. Rodwell*, 20 M.J. 264 (C.M.A.1985); *United States v. Johnson*, 25 M.J. 503 (A.F.C.M.R. 1987); R.C.M. 920(e)(2). His failure to do so was error.

### *What Remedy?*

■ We could order a rehearing as to the attempted desertion charge in order to correct any prejudice to the appellant as to the trial court's findings. However, we do not feel this would serve the ends of justice at this time. Instead, we may cure this instructional error by disapproving the findings of guilty of attempted desertion and substituting therefor findings of guilty as to the lesser included offense. We can do so even though the lesser included offense was not considered at trial. *United States v. McKinley*, 27 M.J. at 79, and

---

(c) Any person subject to this chapter may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated.

*See also* MCM, Part IV, paras. 2 and 4 (1984).

4. We acknowledge that Article 80—Attempts is listed as a lesser included offense under most paragraphs in the Manual which discuss the punitive articles of the Code.

5. The substantive offenses of AWOL and going from a place of duty might also be lesser included offenses under a factual scenario similar to that present in this case. *See United States v. Hobbs, supra.* AWOL is an instantaneous offense, complete the instant an accused absents

himself or herself without authority. Its duration is merely a matter in aggravation for the purpose of increasing the punishment authorized. MCM, Part IV, para. 10 c(8). However, here the appellant was charged with attempting to absent himself from his "organization" at Lackland AFB, and from the record it is not sufficiently clear that he was in fact successful in leaving his organization since he never made it off the base. As for going from his place of duty, where precisely his place of duty was, was never established. We know he left a "controlled dorm" area, but the record is silent as to the circumstances under which he could or could not leave that area.

cases cited therein. The evidence of record supports beyond a reasonable doubt the appellant's guilt of attempted AWOL.

■ We find no prejudice to the appellant's substantial rights as to the sentence because of the required modification in the findings. The case was tried by special court-martial and the appellant had already providently plead guilty to malingering by intentional self-inflicted injury. The maximum punishment for that offense alone (a dishonorable discharge and five years confinement) far exceeded the jurisdictional limits of a special court. Thus, the maximum punishment the appellant faced was not affected by the error committed.[6] The approved sentence was well beneath the maximum authorized at a special court-martial. All of the evidence presented with regard to the attempted desertion charge was equally applicable to the offense of attempted AWOL. The evidence indicates the appellant's brief service record was far from sterling. We are convinced that the sentence is no greater than that which would have been imposed absent the instructional error. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986); *United States v. Suzuki*, 20 M.J. 248 (C.M.A.1985).

We affirm only so much of the findings of guilty of the Additional Charge and its Specification as finds that the appellant "... did at Lackland Air Force Base, Texas, on or about 6 July 1988, attempt to absent himself from his organization [as stated in the specification], without authority" in violation of Article 80, UCMJ. The approved findings of guilty, as modified, and the sentence are correct in law and fact and, on the basis of the entire record, are

AFFIRMED.

Senior Judges LEWIS and KASTL concur.

---

**6.** We consider the maximum punishment for the offense of attempted AWOL to be the same as that provided for an unauthorized absence of less than three days; that is, confinement and forfeiture of two-thirds pay for one month. MCM, Part IV, para. 10 e(2)(a) (1984).