**UNITED STATES, Appellee,**

v.

**Yvette M. McGHEE, Specialist Four,
U.S. Army, Appellant.**

**Docket No. 63,993.
CM 8800958.**

U.S. Court of Military Appeals.

Argued Nov. 28, 1990.

Decided May 20, 1991.

For Appellant: *Captain Brian D. Bailey (argued); Colonel Robert B. Kirby (on brief); Captain Paula C. Juba.*

For Appellee: *Captain Joel J. Berner (argued); Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Major Martin D. Carpenter (on brief); Major Maria C. Fernandez.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

During April of 1988, appellant was tried by a general court-martial at Fort Ord, California. The officer and enlisted members of this court-martial found her guilty, contrary to her pleas, of involuntary manslaughter of her daughter S, of maiming

and assaulting her son A, and two assaults on her daughter S, in violation of Articles 119, 124, and 128, Uniform Code of Military Justice, 10 USC §§ 919, 924, and 928, respectively. They sentenced her to a dishonorable discharge, confinement for 6 years, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

On November 30, 1989, the Court of Military Review held that the evidence of record in this case was insufficient to support the findings of guilty to the maiming and involuntary manslaughter charges. Instead, it affirmed findings of guilty to two separate aggravated assaults on S and A, each with a means likely to inflict grievous bodily harm. 29 MJ 840 (1989). The appellate court below reassessed the sentence and affirmed a bad-conduct discharge, confinement for 5 years, total forfeitures, and reduction to E–1. *Id.* at 842.

This Court granted the following issue for review concerning the substituted findings of guilty to aggravated assault on S:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY AFFIRMING AGGRAVATED ASSAULT AS A LESSER–INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER.

We hold that it did and remand this case to the court below to determine whether the lesser-included offense of negligent homicide, in violation of Article 134, UCMJ, 10 USC § 934, may be affirmed. *See United States v. McKinley*, 27 MJ 78 (CMA 1988).

Appellant was charged, *inter alia*, with involuntary manslaughter under Article 119(b)(1), which provides:

(b) Any person subject to this chapter who, *without an intent to kill or inflict great bodily harm, unlawfully kills a human being—*

(1) *by culpable negligence;* or

(2) while perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person; *is guilty of involuntary*

*manslaughter* and shall be punished as a court-martial may direct.

(Emphasis added.)

She was found guilty of this offense, which was charged as follows:

SPECIFICATION: In that [appellant] ... did, at Fort Ord, California, on or about 11 January 1988, *by culpable negligence, unlawfully kill [S], by failing to protect her from the physical abuse of Sergeant Clay R. Hooker, a failure Specialist Four Yvette M. McGhee knew might for[e]seeably result in life-threatening injury to [S].*

(Emphasis added).

The Court of Military Review stated the following as the basis for the finding of guilty of this offense:

Regarding [S]'s death, the appellant was on notice from her son, [A], that Sergeant Hooker had punched [S], age 5, in the stomach about two months before he punched her again. On the second occasion, her small intestine ruptured, leading to peritonitis and shock. She died within 24 hours.

Involuntary manslaughter occurs by culpable negligence that may be "a negligent act or omission which, when viewed in light of human experience, might foreseeably result in the death of another, even though death would not necessarily be a natural and probable consequence of the act or omission." M.C.M., 1984, Part IV, paragraph 44c(2)(a)(i). The Manual for Courts–Martial goes on to point out that involuntary manslaughter may occur by use of dangerous instrumentalities "without taking reasonable precautions to ascertain that [they] would not be dangerous." *Id.* But, the Manual speaks only of inherently dangerous items such as pistols, poisons, and dangerous drugs. We realize that the appellant was charged with a high degree of care in safeguarding her child of tender years from danger when leaving her in the care of another. She suspected child abuse for she knew Sergeant Hooker had scalded [S]'s hand. As distressing as this pattern of excessive physical disci-

pline abuse is, we have a reasonable doubt that human death "might" foreseeably have resulted in view of ordinary human experience.

We have a further problem in assessing the court-martial's findings against the Manual's standard for involuntary manslaughter because of the specification used in charging the offense. The specification alleged that the appellant was culpably negligent "by failing to protect her from the *physical abuse* of Sergeant Clay R. Hooker, a failure [the appellant] knew might foreseeably result in *life-threatening injury* to [S][M]" (emphasis added). The standard for guilt established by that specification can reasonably be seen as less exacting than that prescribed by the manual. In the Manual, "death" had to be reasonably foreseeable. It should have been so charged. *See United States v. Henderson*, 23 MJ 77 (CMA 1986) (involuntary manslaughter by giving an overdose of cocaine was upheld).

In *United States v. Perez*, 15 MJ 585 (ACMR 1983), this court affirmed a conviction of negligent homicide by a mother who left her five-month-old child in the care of her boyfriend after he twice inflicted severe injuries on the infant that required hospitalization. The battalion commander had warned the child's mother, providing her his conclusion that the boyfriend was lying to her when he told her that the injuries occurred accidentally. In that case, we found that upon the facts known to her, the death of the child was a natural and foreseeable consequence of her negligent act in leaving the infant in the care of her boyfriend.

The case before us differs somewhat. Here, the five-year-old deceased had been at least twice abused by a boyfriend, and the appellant was on notice of that, but we have a reasonable doubt that the pattern of abuse portended death. In fact, the pattern of physical abuse went on for a long time without an apparent risk of death. The abysmal routine became normalcy for the couple.

*On the other hand, the appellant recklessly failed in her high duty of care to foresee likely grievous bodily injuries from leaving her daughter with her boyfriend. Thus, we conclude that she is guilty of aggravated assault through her gross neglect* in leaving her daughter with her boyfriend who was likely to inflict grievous bodily harm upon her daughter. *See* MCM, 1984, Part IV, paragraph 54c(4)(a)(iii) (" '[g]rievous bodily harm' means serious bodily injury"). *Cf. United States v. Perez*, 15 MJ 585 (ACMR 1983) (negligent homicide by leaving baby with boyfriend who had caused serious injuries before). *Her degree of culpability warrants our finding guilt of aggravated assault rather than merely negligent homicide.* The difference in maximum punishments reflects our assessment of this case: a dishonorable discharge and confinement for three years for the aggravated assault and a bad-conduct discharge and confinement for one year for the negligent homicide.

\* \* \* \* \* \*

The court affirms only so much of the findings of guilty of Additional Charge I and its Specification as find that the appellant did assault [S] L. [M], constituting assault with a means likely to inflict grievous bodily harm....

29 MJ at 841–42 (emphasis added).

---

■ There are several problems with the Court of Military Review's decision in this case. The first is its finding that appellant acted with gross neglect in leaving her daughter with Sergeant Hooker. *Cf.* para. 43c(4)(a), Part IV, Manual for Courts–Martial, United States, 1984. The court-martial members, however, found that her actions constituted culpable negligence, and the convening authority approved that finding. *See United States v. Baker*, 24 MJ 354, 356 (CMA 1987); para. 44c(2)(a). While it has been suggested that gross negligence and culpable negligence are the same (*see United States v. Kick*, 7 MJ 82, 87 n.1 (Perry, J., dissenting)), this change in terminology causes us concern. *See United States v.*

*Judd,* 10 USCMA 113, 118–19, 27 CMR 187, 192–93 (1959). Article 66(c), UCMJ, 10 USC § 866(c), precludes the Court of Military Review from finding a possible greater degree of negligence than that found by the court-martial. *See United States v. Brown,* 18 MJ 360 (CMA 1984); *United States v. Kelly,* 14 MJ 196, 199–200 (CMA 1982); *cf. United States v. Hoskins,* 29 MJ 402, 405 (CMA 1990).

█ In any event, we also note that the court-martial members were not instructed that aggravated assault was a lesser-included offense of the involuntary-manslaughter charge in this case. Moreover, the Manual for Courts–Martial does not state that aggravated assault is a lesser-included offense of involuntary manslaughter, although it does list it as a lesser-included offense of voluntary manslaughter. *Compare* para. 44d(1) *with* (2), Part IV. Finally, trial counsel and defense counsel agreed that negligent homicide was the only lesser-included offense of the charged offense of involuntary manslaughter. In view of the decision of this Court in *United States v. McKinley,* 27 MJ at 80, the law of the case dictates that appellant cannot now be found guilty of aggravated assault as a lesser-included offense.

█ A final problem with the decision below exists as a result of the recent decision of this Court in *United States v. Emmons,* 31 MJ 108 (CMA 1990). There, a majority of this Court expressed some reservations with the legal status of aggravated assault as a lesser-included offense of involuntary manslaughter by culpable negligence. *Id.* at 112 n. 4. We maintain those reservations today, especially in light of the intent requirement of aggravated assault which is not present in Article 119(b)(1). Nevertheless, we are quite convinced that negligent homicide is a lesser-included offense of involuntary manslaughter at least under Article 119(b)(1). The Manual states the same (para. 44d(2)(b), Part IV), and the court-martial members were so instructed in this case. Accordingly, a remand of this case to the Court of Military Review to consider the lesser-included offense of negligent homicide * is appropriate.

The decision of the United States Army Court of Military Review is reversed to the extent it affirms a finding of guilty of aggravated assault under Additional Charge I and the sentence. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review of Additional Charge I and the sentence.

Judge COX concurs.

EVERETT, Senior Judge (concurring in part and dissenting in part):

The Court of Military Review—exercising the factfinding powers conferred upon it by Article 66(c) of the Code, 10 USC § 866(c)—found "a reasonable doubt that the pattern of abuse portended death." 29 MJ 840, 842 (1989). Thus, it distinguished the result in this case from that in *United States v. Perez,* 15 MJ 585 (ACMR 1983), where, on similar facts, that court had affirmed a conviction of negligent homicide.

Therefore, although I join with the majority in reversing the decision below as to aggravated assault, I cannot join in authorizing the court below to affirm a finding of guilty of negligent homicide. Indeed, the only lesser offense that could be affirmed consistent with the earlier findings of the Court of Military Review is assault and battery.

---

* We do not construe the opinion of the Court of Military Review as holding as a matter of fact that negligent homicide did not occur in this case.