UNITED STATES, Appellee,

v.

Specialist Darren L. JOHNSON, 429–39–3305, United States Army, Appellant.

ACMR 9202145.

U.S. Army Court of Military Review.

3 May 1994.

For Appellant: Major Robin L. Hall, JAGC, Captain Michael Huber, JAGC, Captain Robert H. Pope, JAGC (on brief).

For Appellee: Major James L. Pohl, JAGC; Colonel Dayton M. Cramer, JAGC, Captain Gregory T. Baldwin, JAGC, Captain R.W. Clark, JAGC (on brief).

Before WERNER, LANE, and RUSSELL, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial, composed of a military judge sitting alone, of making a false official statement with intent to deceive and aggravated assault in violation of Articles 107 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 928 (1988) [hereinafter UCMJ]. He was sentenced to a bad-conduct discharge, confinement for twenty months, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence but suspended execution of confinement in excess of 177 days with provision for automatic remission.

After initial briefs were filed, this court specified the following issues:

WHETHER THE COURT–MARTIAL'S FINDINGS OF GUILTY OF CHARGE II, MAKING A FALSE OFFICIAL STATEMENT TO A STATE CRIMINAL INVESTIGATOR, WAS ERRONEOUS AS A MATTER OF LAW BECAUSE IT LACKED OFFICIALITY?[1] ASSUMING THIS IS SO,

WHETHER THIS COURT MAY AFFIRM A FINDING OF GUILTY OF THE AFOREMENTIONED OFFENSE AS A VIOLATION OF ARTICLE 134, UCMJ?

For the reasons set forth below, we answer the first question in the affirmative; the second in the. negative.

## I. Facts

On the evening of 25 January 1992, while visiting a bar near his trailer home in Harker Heights, Texas, the appellant became involved in an altercation with another patron, Sergeant First Class (SFC) Rylant. The appellant precipitated the altercation by making lewd remarks to SFC Rylant's wife and the wife of another sergeant as they were sitting together at a table. After SFC Rylant admonished the appellant for his uncouth behavior, the appellant hit him and knocked him to the floor. Sergeant First Class Rylant chased the appellant into the street, pulled a knife from his pocket, and pursued the appellant as he ran to his trailer home, some 100 to 300 feet away. The appellant grabbed a .22 caliber pistol, came out of the trailer and fired about six shots into the air and about four shots into the ground before reentering the trailer. A bystander, another soldier, was slightly wounded by one of the bullets.

Shortly thereafter, the civilian police arrived on the scene after having been called by witnesses to the shooting. After conducting a brief investigation, they confronted the appellant in his trailer, told him someone had been shot, and asked him if he had heard gunshots or fired any rounds in the air to which he replied in the negative. Later, he was questioned by Detective Marlow at the trailer concerning the incident. After waiving his rights against self-incrimination, the appellant told Detective Marlow, that "he had no knowledge of [the incident], that he knew nothing of it, that he had been asleep and that the first thing that he knew about it was when the police beat on his door." As the police had other evidence indicating that the appellant perpetrated the shooting, they apprehended him and placed him in custody at the local police station. During a reinterrogation there, the appellant signed a statement in which he admitted having fired the pistol into the air and in the direction of SFC Rylant and a group of eight people behind him. He said he fired the shots to frighten SFC Rylant and stop his pursuit. He also admitted that his earlier statement to Detective Marlow at his trailer was false and that he lied because he was "scared."

The appellant moved for a finding of not guilty on grounds that the government failed

---

1. The specification alleges that, on or about 26 January 1992, the appellant falsely made, with intent to deceive, an official statement to Detective Marlow by saying, " 'I don't know anything about any shooting tonight,' or words to that effect."

to establish, as a matter of law, that the appellant's oral statement to Detective Marlow was official. The military judge denied the motion, ruling that decisional law:

> make[s] it clear to this court that officiality within the meaning of Article 107 is to be construed in a similar manner to the phrase "concerning any matter within the jurisdiction of any department or agency of the United States" in Title 18, Section 1001. The court believes that ... a statement to the Harker Heights Police Department in this matter could be official.

## II. Officiality of the Statement

■ We hold that the appellant's oral statement to Detective Marlow was not "official" within the meaning of Article 107, UCMJ.

Neither the Uniform Code of Military Justice nor the Manual for Courts–Martial satisfactorily defines the term "official" to encompass the factual situation in this case. The Code broadly proclaims, "Any person subject to this chapter who, with intent to deceive, ... makes any other false official statement knowing it to be false, shall be punished as a court-martial may direct." UCMJ art. 107. The Manual interprets the words "official statements" to "include all ... statements made in the line of duty." Manual for Courts–Martial, United States, 1984, Part IV, para. 31c(1) [hereinafter MCM, 1984]. More expansively, the Manual provides that where an accused or suspect makes a statement during an interrogation, the statement is not official unless that individual had an independent duty or obligation to speak. *Id.* para. 31c(6)(a). Conversely, if the individual was under a duty or obligation to speak during an interrogation then the statement is official. *Id.* para. 31c(6)(b).

Military decisional law furnishes a better definition of officiality. After examining the history of Article 107, the Court of Military Appeals first announced that the purpose of the article was "to protect the authorized functions of governmental departments and agencies from the perversion which might result from the deceptive practices described." *United States v. Hutchins,* 5 U.S.C.M.A. 422, 18 C.M.R. 46, 51, 1955 WL 3280 (1955) (quoting *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941)); *accord, United States v. Aronson,* 8 U.S.C.M.A. 525, 25 C.M.R. 29, 1957 WL 4643 (1957); *United States v. Arthur,* 8 U.S.C.M.A. 210, 24 C.M.R. 20, 1957 WL 4690 (1957).[2] More recently, the court followed the lead of the Supreme Court in expanding the scope of Article 107 so that it now applies to "all matters confided to the authority of an agency or department." *United States v. Jackson,* 26 M.J. 377, 379 (C.M.A.1988) (quoting *United States v. Rodgers,* 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984)). Thus, regardless of a servicemember's duty to speak, "statements to military criminal investigators can now be considered official for purposes of Article 107." *United States v. Prater,* 32 M.J. 433, 438 (C.M.A.1991). Another requirement is that the offending statement "must be *about* and *pertain* to a matter within the jurisdiction of [the armed forces] of the United States" to constitute a violation of Article 107. *United States v. Disher,* 25 C.M.R. 683, 686, 1958 WL 3253 (A.B.R.1958), *pet. denied,* 26 C.M.R. 516 (C.M.A.1958). If the statement does not pervert an authorized function of a governmental agency acting in furtherance of a military interest, it will not violate Article 107.

Detective Marlow was not a military criminal investigator nor was he acting on behalf of the armed forces. As a police investigator for Harker Heights, a governmental body chartered under the laws of the State of Texas, his authority extended to enforcing the laws of that jurisdiction only. Since he was not enforcing military law, the appellant's false statement to him neither perverted nor corrupted the functions of an agency of the armed forces or any agency authorized to act on behalf of the armed forces. Therefore, the appellant's oral statement to Detective Marlow, although false and made with intent to deceive, was not "official" and did

---

2. The Supreme Court cited this language in *Gilliland,* in construing 18 U.S.C. § 1001, the federal statute proscribing the making of false statements to officials of federal agencies.

not violate Article 107.[3]

### III. Violation of Article 134

■ We also hold that, *under the circumstances of this case,* we may not affirm findings of guilty of making a false statement to a state criminal investigator as a violation of the first two clauses of Article 134.

Under Article 66(c), UCMJ, a court of military review may affirm only those findings approved by a convening authority which are correct in law and fact. "Any reviewing authority with the power to approve or affirm a finding of guilty may approve or affirm, instead, so much of the finding as includes a lesser included offense." UCMJ art. 59(b); *see also United States v. Patterson,* 14 U.S.C.M.A. 441, 34 C.M.R. 221, 1964 WL 5000 (1964). "A lesser offense is included in a charged offense when the specification contains allegations which either expressly or by fair implication put the accused on·notice to be prepared to defend against it in addition to the offense specifically charged." MCM, 1984, Part IV, para. 2b(1).

The Court of Military Appeals has

long recognized that an appellate court may disapprove a finding because proof of an essential element is lacking or, as a result of instructional errors concerning lesser-included offenses, may substitute a lesser-included offense for the disapproved findings. This is true even if the lesser-included offense was neither considered nor instructed upon at the trial of the case.

*United States v. McKinley,* 27 M.J. 78, 79 (C.M.A.1988) (citations omitted). The application of this principle is clear where all of the elements of the lesser offense are included in the elements of the greater offense. *See* MCM, 1984, Part IV, para. 2b(1)(a–c). It is less clear when an element of the included offense is not expressly set out in the specification but is alleged by fair implication. This is especially evident where, as in this case, the offense charged implicates a lesser included offense punishable under the first two clauses of Article 134 as conduct prejudicial to good order and discipline or discrediting to the armed forces.

The *McKinley* court's liberality in allowing reviewing authorities to substitute findings of guilty of lesser included offenses regardless of whether the court-martial considered or received instructions on those offenses has not been universally followed. Other opinions from the Court of Military Appeals and from this court have taken a more restrictive view of when a reviewing authority may affirm a lesser included offense. *See United States v. McGhee,* 32 M.J. 322 (C.M.A.1991); *United States v. Mayo,* 12 M.J. 286 (C.M.A. 1982); *United States v. Bowling,* 14 U.S.C.M.A. 166, 33 C.M.R. 378, 1963 WL 4871 (1963); *United States v. Abeyta,* 12 M.J. 507 (A.C.M.R.1981); *United States v. Martin,* 50 C.M.R. 314, 1975 WL 15608 (A.C.M.R.), *aff'd,* 1 M.J. 75 (C.M.A.1975); *United States v. Almendarez,* 46 C.M.R. 814, 1972 WL 14501 (A.C.M.R.), *pet. denied,* 46 C.M.R. 1323 (C.M.A.1972). These opinions suggest that a court of military review may affirm a conviction of a lesser included offense under clauses 1 and 2 of Article 134, if the evidence is legally and factually sufficient and the record indicates that the trial court considered and found the accused guilty of either of them. If the court is composed of members, so long "[a]s the allegations of the specification are supported by evidence, and the trial judge instructed the court members they had to find, beyond a reasonable doubt, that the accused's conduct was prejudicial to good order and discipline [or discrediting to the armed forces], the findings of guilty are unassailable." *Mayo,* 12 M.J. at 294. Similarly, if the court-martial was composed of a military judge sitting alone, we may not affirm a finding of guilty under Article 134 where "[t]he record contains no indication that the military judge, who sat alone as a court-martial, even considered, much less

---

**3.** We can envision situations where servicemembers may be prosecuted for making false statements to state or nonmilitary federal officials acting on behalf of the armed forces. For example, where a servicemember lies to a state official to avoid apprehension as a deserter pursuant to Article 8, UCMJ, he may be found to have violated Article 107. False statements to nonmilitary federal investigative agencies may also be prosecuted but not under Article 107. Instead, the third, crimes and offenses not capital, clause of Article 134 could be used to incorporate an allegation of 18 U.S.C. § 1001.

found, whether the conduct was prejudicial to good order and discipline or was service discrediting." *Almendarez*, 46 C.M.R. at 816.[4]

I believe that precedent and logic require us to follow the more restrictive rule. *See Abeyta*, 12 M.J. at 509. This court's power to affirm findings of guilty of lesser included offenses under the first two clauses of Article 134 depends on whether the court-martial found that the conduct for which the accused was convicted prejudiced good order and discipline or discredited the armed forces. There are several ways in which a court of military review may make that determination. First, where the court-martial finds the accused guilty of either or both of those elements because the language of clauses 1 or 2 of Article 134 was expressly incorporated in the specification. The specification in this case does not allege such language. Second, as indicated above, where the military judge instructs the court it may find the accused guilty of those elements or the record indicates that the military judge has so found. The military judge did not indicate that the appellant's conduct was prejudicial to good order and discipline or discrediting to the service. Third, where the greater offense of which the accused was found guilty is inherently violative of the first two clauses of Article 134. For example, rape is inherently prejudicial to good order and discipline and discrediting to the armed forces. A

fortiori, a conviction for rape under Article 120 includes the elements necessary to sustain a conviction under Article 134 of the lesser included offenses of assault with intent to commit rape or indecent assault.[5]

█ Conduct to the prejudice of good order and discipline refers only to acts directly prejudicial to good order and discipline and not to acts which are prejudicial only in a remote or indirect sense. Almost any irregular or improper act on the part of a member of the military service could be regarded as prejudicial in some indirect or remote sense; however, Article 134 does not include these distant effects. It is confined to cases in which the prejudice is reasonably direct and palpable. MCM, 1984, Part IV, para. 60c(2)(a); *see also United States v. Williams*, 26 M.J. 606, 608 (A.C.M.R.1988) (conduct must be directly and palpably prejudicial to good order and discipline and easily recognizable as criminal) (citations omitted).

Conduct of a nature to bring discredit upon the armed forces is that "conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." MCM, 1984, Part IV, para. 60c(2)(c).

█ Some acts are inherently prejudicial to good order and discipline or discrediting to the service. *United States v. Greene*, 34 M.J. 713, 714 (A.C.M.R.1992) (citing *United*

---

4. The rule applies where the lesser offense violative of Article 134 is expressly listed in the Manual for Courts–Martial as included in a greater offense violative of a specific article of the Code, *McGhee*, 32 M.J. 322; or where the lesser included offense violative of Article 134, though not listed as such in the Manual, is fairly included in the language of the specification. *Mayo*, 12 M.J. 286. *McGhee* held that a court of military review could affirm a finding of guilty of negligent homicide as a lesser included offense to involuntary manslaughter provided that the court members were properly instructed as to the elements of the lesser offense. 32 M.J. at 325. *Mayo* held that a court of military review could affirm a finding of guilty of wrongfully filing a false report with a charge-of-quarters as a lesser included offense of falsely communicating a bomb threat in violation of a federal statute under the crimes not capital clause of Article 134. 12 M.J. at 295. So long as there was sufficient evidence to establish the offenses, and the court members were instructed that they had to find beyond a reasonable doubt that the accused's conduct was preju-

dicial to good order and discipline or discrediting to the armed forces, the court of military review could affirm the respective lesser included offense under clauses 1 or 2 of Article 134.

5. In his erudite concurring opinion, Judge Lane would recognize a fourth way for this court to affirm a finding of guilty of a lesser included offense under clauses 1 or 2 of Article 134 in lieu of a finding of guilty of an offense under a specific article. That is, where the former offense is specifically denominated in the Manual as being lesser included within another offense, this court may presume that the court-martial found the accused's conduct violated clauses 1 or 2 of Article 134 by finding him guilty of the greater offense. Judge Lane's view not only legitimizes affirmance of Article 134 lesser included offenses inherently prejudicial to good order and discipline or discrediting to the service, but also those that are not. Although this theory is sound, I find no case law to support it and am unwilling to subscribe to it at this time.

*States v. Lowe*, 4 U.S.C.M.A. 654, 16 C.M.R. 228, 1954 WL 2445 (1954) and *United States v. Light*, 36 C.M.R. 579, 1965 WL 4803 (A.B.R.1965)). Others require an assessment of the circumstances surrounding the commission of the offense in making the determination. *United States v. Poole*, 39 M.J. 819 (A.C.M.R.1994). Generally, offenses involving moral turpitude are inherently prejudicial or discrediting. *Id.*

I cannot say that when a servicemember makes a false statement to a state official investigating a crime or any other matter encompassed by that official's responsibilities, he inherently prejudices good order and discipline or discredits the armed forces. Although lying is an act of dishonesty that reflects a degree of moral turpitude, I can find no authority holding it to be per se wrongful or discreditable. Even the proscription against lying in the Ten Commandments applies only to "bearing false witness against thy neighbor." Therefore, for this court to substitute a guilty finding of a lesser included offense under the first two clauses of Article 134 for a guilty finding under Article 107, the record must reflect that the military judge expressly found the appellant's making of the false statement prejudicial to good order and discipline or discrediting to the armed forces. As he did not make such a finding on the record in this case, this court is powerless to substitute a guilty finding of a lesser included offense violative of clauses 1 or 2 of Article 134.

■ This is not to say that the appellant's making of the false statement to Detective Marlow did not have the potential to prejudice good order and discipline or lessen the prestige of the armed forces in the civilian community. To the contrary, the evidence suggests that the appellant lied to Detective Marlow in order to "deflect further inquiry into his misconduct." *See United States v. Hunt*, 34 M.J. 779, 782 (A.C.M.R.1992), *aff'd*, 37 M.J. 344 (C.M.A.1993). This was not unlike obstruction of justice.[6] Acts which purport to obstruct military criminal investigations are prejudicial to good order and discipline when they have a direct impact on the efficacy of the military criminal justice system. *Finsel*, 36 M.J. at 444. Acts which tend to obstruct state or foreign criminal investigations, though more remote, can also affect the military justice system. Whether that effect is palpable enough to prejudice good order and discipline or discredit the armed forces depends on the circumstances of the case.

In *United States v. Smith*, 32 M.J. 567, wherein the accused attempted to induce a witness to lie at a preliminary hearing in a state criminal proceeding, Senior Judge De Giulio opined:

> Whenever a person subject to the Code acts to obstruct justice in a state criminal proceeding he should know that a military criminal investigation or proceeding could result as it did in the case before us. Since the Supreme Court's decision in *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987), *reh'g denied*, 483 U.S. 1056, 108 S.Ct. 30, 97 L.Ed.2d 819 (1987), which returned jurisdiction to the military over any offenses committed by United States soldiers in a civilian setting, nothing restrains the military from deterring its members from interfering with a state criminal proceeding. With few procedural limitations, the military could try the case pending before the state court. The military has an interest in preserving the image that its service-

---

**6.** One who commits an allegedly obstructionist act with intent to interfere with a criminal investigation may be convicted of obstruction of justice because the act tends to subvert or corrupt the administration of justice. *United States v. Finsel*, 36 M.J. 441 (C.M.A.1993); *United States v. Gussen*, 33 M.J. 736 (A.C.M.R.1991). For example, asking a potential witness to lie or to withhold information from criminal investigators constitutes obstruction of justice. *United States v. Tedder*, 24 M.J. 176 (C.M.A.1987). This court has held that interference with a criminal investigation constitutes obstruction of justice under the Code regardless of whether the investigation was conducted by military, state, or foreign authorities. *United States v. Kirks*, 34 M.J. 646 (A.C.M.R.1992); *United States v. Smith*, 32 M.J. 567 (A.C.M.R.1991), *rev'd on other grounds*, 34 M.J. 319 (C.M.A.1992); *United States v. Bailey*, 28 M.J. 1004 (A.C.M.R.1989). I note, however, that the Manual does not list any lesser included offenses for obstruction of justice; and the Court of Military Appeals has opined that this strongly suggests that prosecution of such offenses is barred by the preemption doctrine. *McKinley*, 27 M.J. at 80 n. 1.

members have integrity. Appellant's acts are clearly the discreditable conduct that Article 134 was intended to prohibit.

*Id.* at 569–70.

In *United States v. Bailey*, 28 M.J. 1004, wherein the accused lied to Korean police during their investigation of a vehicle accident, Senior Judge Myers wrote:

We also find that appellant's conduct was service discrediting and prejudicial to good order and discipline. It can hardly be gainsaid that it brings discredit upon the armed forces of the United States when a soldier makes false statements to foreign law enforcement officials regarding an offense in which the soldier is involved with a citizen of the host country. Further, it is obviously prejudicial to good order and discipline when a soldier relates false information which he knows or reasonably should know will ultimately come to the attention of responsible military authorities of the United States.

*Id.* at 1007 (citation omitted).

The evidence indicates that the appellant knew or had reason to believe that military criminal jurisdiction was likely to be asserted in this case. He knew that the police were investigating his shooting of an individual following an altercation among soldiers caused by the appellant's misbehavior in the bar. He also knew that it was a serious offense and that the victim may have been another soldier. Under the circumstances it is reasonable to conclude that the appellant falsified his statement with intent to subvert the exercise of military jurisdiction. Therefore, his conduct could have prejudiced good order and discipline.

For similar reasons, the appellant's conduct could have discredited the armed forces. The attempted obstruction of a state's investigation of a serious crime, the revelation of which would be likely to cause significant embarrassment to the armed forces or to lessen the esteem, integrity or reputation of service personnel generally, is potentially

discrediting to the service. A servicemember who lies to police authorities in order to conceal his shooting of a pistol into a group of people on a public street most certainly impugns the reputation of the armed forces.

We have considered the matters submitted by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.

The findings of guilty of Charge II and its Specification are set aside and those charges are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement for fifteen months, forfeiture of all pay and allowances, and reduction to Private E1.

LANE, Judge, concurring:

I agree completely with the analysis and conclusions in Part II of the lead opinion concerning the law on officiality of statements and its application in this case. Accordingly, I concur in the actions on findings and the sentence reassessment stated above.

I also agree with Part III of the lead opinion insofar as it finds that there is a potential lesser offense of "false unofficial statement" chargeable under Article 134, UCMJ, but that we may not affirm findings of guilty as to that offense in this case. However, I have arrived at these latter conclusions through a different analytical model, based mainly on my study of several Court of Military Appeals opinions.

The narrow issue under consideration is the power of this court, as a "reviewing authority," to "affirm … so much of a finding as includes a lesser included offense." UCMJ art. 59(b).

In order to affirm a lesser included offense in lieu of affirming the offense of which the appellant stands convicted—other than one under the "crimes and offenses not capital" clause of Article 134 [1]—we should first deter-

---

1. Offenses charged under this clause present a special problem that the model does not resolve. To affirm a lesser offense under either of the other clauses of Article 134, requires specific instructions or findings on prejudice to good order and discipline or service discredit. *United States v. Mayo*, 12 M.J. 286 (C.M.A.1982); *United*

mine whether there was a specific understanding at trial as to lesser included offenses. This could be the result of (1) an agreement between the counsel and military judge, (2) instructions by the military judge to the panel, or (3) an announcement by the military judge, in a judge alone trial, prior to deliberations on findings. *United States v. McGhee,* 32 M.J. 322, 325 (C.M.A.1991) (counsel agreed negligent homicide was the only lesser included offense of involuntary manslaughter); *United States v. McKinley,* 27 M.J. 78, 80 (C.M.A.1988) (judge ruled and counsel agreed no lesser included offenses of obstructing justice); *United States v. Morgan,* 8 U.S.C.M.A. 659, 25 C.M.R. 163, 166–67, 1958 WL 3105 (1958) (conviction of lesser included offense not instructed upon cannot stand). If present, this determination becomes the "law of the case" unless there is "plain error."[2] *McKinley,* 27 M.J. at 80.

If there is no "law of the case" to control lesser included offense findings, we should then look to the Manual for Courts–Martial to see which offenses are specifically determined therein to be lesser included offenses for the charged specification. *McGhee,* 32 M.J. at 325 (Manual lists negligent homicide as lesser included offense of involuntary manslaughter); *McKinley,* 27 M.J. at 80 (Manual states no lesser included offense of obstructing justice).

When, under either of these two scenarios, we have a lesser included offense to the offense of which the appellant was convicted at trial, we may (subject to a determination of sufficiency) affirm that lesser included offense. *United States v. Patterson,* 14 U.S.C.M.A. 441, 34 C.M.R. 221, 224 (1964) ("Appellate affirmance of a lesser offense included within the offense found is supported by substantive law, established rules of procedure, and reason."). In most instances, (for example, voluntary manslaughter (Article 119) as a lesser included offense to murder (Article 118)) it is a simple matter

to see that the elements of the lesser are different only in degree from that of the greater ("the intent to kill or inflict great bodily harm" is similar in nature but lesser in degree to "a premeditated design to kill"). The area of concern has been when a lesser included offense is found in Article 134 as an offense prejudicial to good order and discipline or service discrediting.

The Court of Military Appeals has held that "[n]ecessarily, all the elements of offenses lesser included within that charged are 'found by the trial court' when it convicts the accused of the greater offense." *Id.* (citation omitted). For this to be true in the case where the Manual specifically lists an offense under Article 134 (for example, negligent homicide) as a lesser included offense (here, of murder), we must indulge in a presumption.[3] This presumption is that any offense contained in a specific article of the Code was legislated as a military offense (that is, an offense for which a military member should be tried) because it was deemed by Congress to be prejudicial to good order and discipline and service discrediting. *See United States v. Morgan,* 33 M.J. 1055, 1060 (A.C.M.R.1991), *aff'd,* 37 M.J. 407 (C.M.A. 1993) (quoting *United States v. Clardy,* 13 M.J. 308, 315 (C.M.A.1982)) ("Regulations which accompany legislation are a guide to legislative intent."). Therefore, a finding of guilty of murder incorporates an unarticulated finding that the accused's conduct was prejudicial to good order and discipline and service discrediting sufficient to support the Manual's listing of negligent homicide as a lesser included offense.

As alluded above, *Patterson* contains an important caveat. After stating the general affirmance power of appellate courts, the Court of Military Appeals stated that:

> this Court has consistently sustained appellate affirmance of an offense included within that found by the court-martial when, on review, it is determined that the

*States v. Almendarez,* 46 C.M.R. 814 (A.C.M.R.), *pet. denied,* 46 C.M.R. 1323 (C.M.A.1972).

**2.** This error must materially prejudice a substantial right of the accused. From this I presume that an agreement or instruction that misbehavior as a sentinel is a lesser included offense of

rape committed in the barracks while on duty as a charge of quarters would not be honored as the former is clearly not contained in the latter.

**3.** Some would call it a "legal fiction," but I think it is more substantial than that term implies.

evidence of record is insufficient to support one of the elements of the offense of which the accused was convicted, but *sufficient to support the lesser offense.*

34 C.M.R. at 224 (emphasis added). Even when acting under this presumption that the findings at the trial level include those of prejudice to good order and discipline and service discrediting conduct, we cannot affirm a lesser included offense under Article 134 if we find that the evidence of record is insufficient to support that finding. It is important, for analytical purposes, to distinguish between the record containing a specific finding (*Patterson* says it is there) and containing sufficient evidence.

When we are faced with a situation where neither of the two lesser included offense scenarios ("law of the case" and specific Manual listing) applies, then we can only affirm a lesser included offense where there are findings with respect to a greater offense which include all the elements of the lesser offense. This means that a lesser offense under Article 134 is probably not affirmable in this situation. *United States v. Martin,* 50 C.M.R. 314 (A.C.M.R.), *aff'd,* 1 M.J. 75 (C.M.A.1975). In *Martin,* the convening authority erred in approving a "wrongful possession" of drugs under Article 134 in lieu of the court-martial's finding of a violation of a lawful general regulation under Article 92 where there was no model Article 134 specification, no listed maximum punishment, the case was tried solely under Article 92 and "there was no indication that the trier of fact ever considered the elements of prejudicial or service-discrediting conduct." *Id.* at 317.

Applying this analysis to the instant case, we find that there was no discussion as to a lesser included offense to that of a false official statement (so there is no "law of the case") and the Manual lists only "attempt" as a lesser included offense. Manual for Courts–Martial, United States, 1984, Part IV, para. 31d. Therefore, we cannot use the *Patterson* presumption to affirm a lesser in-

cluded offense of "false unofficial statement." Because there is no finding of record that can be used to support affirmance of the element of prejudice to good order and discipline or service discredit, we cannot affirm this lesser offense under Article 134.[4]

RUSSELL, Judge, concurring in the result:

I agree with the disposition of this case set forth in the lead opinion and concur with my brethren's conclusion that the military judge did not convict the appellant of an offense under Article 134, UCMJ, of making a false statement when he found him guilty of making a false official statement in violation of Article 107, UCMJ.

A court-martial *may* find an accused guilty of an offense necessarily included in the offense charged. UCMJ art. 79. Moreover, a convening authority may change a finding of guilty of charge or specification to a finding of guilty to an offense that is a lesser included offense of the offense stated in the charge or specification. UCMJ art. 60(c)(3)(B). Finally, a court of military review may affirm so much of an approved finding of guilty as includes a lesser included offense, and which is correct in law and fact. UCMJ art. 59(b) and art. 66(c).

Generally, a lesser offense is necessarily included in a charged offense if the specification contains allegations which either expressly or by fair implication put the accused on *notice* to be prepared to defend against it in addition to the offense specifically charged. MCM, 1984, Part IV, para. 2. This notice requirement for establishing the presence of a lesser offense for charging purposes may be met in two ways: (1) in law, when all of the elements of the lesser offense merge in the greater offense and (2) in fact, when the lesser offense includes an element not common to the greater offense, but where the specification is sufficient to fairly allege the unique element of the lesser of-

---

**4.** I hasten to add that because this case represents the first time a court has stated that there is such an offense as "false unofficial statement" we could not affirm this offense on the due process ground of lack of notice to the accused that he had to defend against such a crime. I also point out that the analysis for determining affirmance is different from that for pleading an offense (and its lesser included offenses), where fair notice and not recitation of all the elements is the key.

fense (such a lesser charge is more like a duplicitous, but unsevered, charge than a true lesser "merged" offense). *See United States v. Teters*, 37 M.J. 370 (C.M.A.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 919, 127 L.Ed.2d 213 (1994) *cf.* MCM, 1984, Part IV, para. 2b.

Though a lesser offense may be fairly charged, conviction of the greater offense necessarily includes conviction of the lesser offense only when the elements of the greater and lesser offenses are merged. *See Teters*, 37 M.J. 370. Where merger exists and a court-martial convicts of the greater charged offense, it also automatically convicts of the subsumed lesser included offense *as a matter of law*. However, where merger does not exist because the lesser offense contains an element not common to the greater offense, we must look beyond the sufficiency of the pleading for some evidence in the record that the unique element of the lesser offense was found, *as a matter of fact*, beyond a reasonable doubt.

In my opinion, to avoid doing violence to military justice, this court should not resort to legal fiction in deciding whether to hold an appellant guilty of a lesser charged offense. For example, it is not fair or accurate to say that conduct alleged solely under Article 134 is "inherently" prejudicial to good order and discipline or service discrediting for findings purposes. Though the unique elements of

Article 134 need not be expressly alleged to give fair notice for charging purposes, they are actual elements that must be proven by the circumstances in each case beyond a reasonable doubt. *See generally, United States v. Hitchman*, 29 M.J. 951 (A.C.M.R. 1990); *United States v. Perez*, 33 M.J. 1050 (A.C.M.R.1991). Moreover, there is no basis in law or logic to extend to all cases the premise that an erroneous conviction of any specific punitive article leaves as legal residue a conviction of the unique elements of Article 134. After all, accepting the reasonable assumption that certain conduct violative of some specific punitive articles is inherently prejudicial or service discrediting, conviction of a lesser offense certainly cannot be affirmed under Article 134 if the conduct that is inherently prejudicial or service discrediting in the greater offense is found on appeal not to exist.[1] Finally, I do not agree that we may affirm a finding of guilty to an unmerged element just because an offense is listed in the Manual for Courts–Martial as a specific lesser included offense of a specified punitive article. We may find that, under the circumstances of a particular case, an element of a listed lesser included offense is not necessarily merged in the finding of the greater offense.[2]

In light of *Teters*, this court should not affirm a lesser included but unmerged offense unless it is clear from the record that a

---

**1.** While I find fault with this premise as applied to the case at bar, I do not fault it as a matter of policy in homicide or rape cases. There it may fairly be said that the gravamen of the wrongfulness that is inherently prejudicial or discrediting in the greater offense (unjustified homicide or sexual molestation) is not mitigated in the lesser offense under Article 134 (also an unjustified homicide or a sexual molestation).

Thus, without doing violence to military justice, it may be accepted as a legal presumption that a finding of guilty to one of the unique elements of Article 134 is implicit in any finding of guilt of a greater offense that includes the element of homicide or sexual molestation. This is so because a reasonable fact finder (had he/she been instructed to do so) could only have found that an unjustified killing or sexual molestation was either prejudicial to good order and discipline or service discrediting.

Moreover, this implicit finding would survive reversal of the conviction of the greater offense in any case where the predicate findings of homi-

cide or molestation are found to be correct in law and fact by the reviewing authority. In such cases, the implicit finding of prejudice or discredit to the military is merged with that express element of Article 134, UCMJ.

**2.** *United States v. McKinley*, 27 M.J. 78 (C.M.A. 1988) is cited in the lead opinion for the general proposition that this court may affirm a lesser included offense, even if the lesser included offense was neither considered nor instructed upon at the trial of the case. It does not hold that Article 79, UCMJ, permits a reviewing court to affirm an unmerged lesser offense. I note that *McKinley* and all of the cases cited by the *McKinley* court for their general proposition, involved merged lesser offenses. Accordingly, limited to its facts, the broad language in *McKinley* is consistent with *Teters*. The important holding in *McKinley* is that the parties may avoid affirmance of a merged lesser offense by this court by reaching consensus on the record that no lesser offense exists. This court is bound by that "law of the case".

legally sufficient finding of guilty was arrived at as a matter of fact. Where guilt of a lesser offense is based on nothing more than some evidence upon which a finding of guilty might have been based if the fact finder had considered it, there is no real finding for the convening authority to approve and nothing for this court to affirm. Such it is with the case at bar. Here the military judge found the appellant guilty of making a false official statement in violation of Article 107, UCMJ. *All* false official statements are inherently prejudicial to good order and discipline because they subvert military administration. Therefore, implicit in the judge's finding that the false statement was "official" was a finding that the conduct was prejudicial to good order and discipline. However, this court on appeal set aside the military judge's finding that the statement was "official". Inasmuch as the implicit finding of prejudice was based solely on the judge's erroneous finding, the implicit finding is also not correct in law. Moreover, there is no indication that the military judge ever actually considered, let alone specifically found beyond a reasonable doubt, whether the appellant's false unofficial statement would have been prejudicial to good order and discipline or service discrediting under the circumstances. *See United States v. Martin,* 50 C.M.R. 314, 317 (A.C.M.R.), *aff'd,* 1 M.J. 75 (C.M.A.1975).